**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Taniela Fakalolo Kivalu, | No. CV-25-04221-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Carrington Mortgage Servicer LLC, et al., | |
| Defendants. | |

Before the Court are (1) the Court's order that Plaintiff Taniela Kivalu show cause for why he should not be sanctioned under Federal Rules of Civil Procedure 11 and 16(f), Arizona Revised Statutes § 12-349(A)(1), and the Court's inherent authority (Doc. 56), to which Kivalu has responded (Doc. 57); (2) Defendant UWM LLC's ("UWM") motion for attorneys' fees and costs (Doc. 58); and (3) Kivalu's motion for a certificate of appealability ("COA") to the Ninth Circuit (Doc. 74). The Court held a hearing on March 31, 2026, at which Kivalu was present. (*See* Doc. 79.) For the following reasons, Kivalu will be sanctioned under Rule 11 and the Court's inherent authority in the amount of $1,215.00, UWM's motion for attorneys' fees and costs will be granted in part in that UWM will be awarded $6,840.00 in fees under Arizona Revised Statutes § 12-341.01, and Kivalu's COA motion will be denied without prejudice.

## I.

The Court set out the background of this case and Kivalu's previous litigation against Defendants in its order dismissing Kivalu's claims with prejudice. (*See* Doc. 51.)

The Court therefore does not recount that background in detail. In a nutshell, Kivalu "has brought approximately eight lawsuits since 2016 in federal court." (*Id.* at 1.) None have been meritorious. (*See id.* at 1-2.) In the two actions Kivalu brought before this one, Kivalu's claims against UWM were dismissed with prejudice, the first time for failure to state a claim and the second time because the claims were barred by claim preclusion. (*Id.* at 2-3.) Kivalu's claims against other defendants, including that Defendant Carrington Mortgage Services, LLC ("Carrington") could not collect payments from him after it became the new servicer of his mortgage contract, met the same fate of dismissal for failure to state a claim. (*Id.*)

Undeterred, Kivalu brought this action in *state* court, rather than in federal court, making the same allegations against UWM that had been found insufficient to state a claim and, later, barred. (*Id.* at 2-3.) He also made similar allegations against Carrington and Defendants Axen Mortgage ("Axen") and Nexa Mortgage ("Nexa")[1] that were alleged previously and dismissed for failure to state a claim. (*Id.*; *id.* at 7-8.) Both UWM and Carrington moved to dismiss in part on grounds that Kivalu's claims were barred by claim preclusion. (*See id.* at 4.)

The Court set a hearing on the motions to dismiss (Doc. 30), which Kivalu did not attend (*see* Doc. 51 at 1 & n.1). The Court granted UWM's and Carrington's motions to dismiss and *sua sponte* dismissed Kivalu's claims against Axen and Nexa because all of his claims were barred by claim preclusion. (*Id.* at 4-8.) The Court denied Kivalu's motions for leave to amend to, among other things, add defendants Brandon Harvy and Michael A. Bosch, Jr. (*Id.* at 8-9.)[2] Judgment was entered thereafter. (*See* Doc. 52.)

The Court also issued an Order to Show Cause requiring Kivalu to show why he should not be sanctioned

under (1) Rule 11 of the Federal Rules of Civil Procedure, Arizona Revised

---

[1] Axen and Nexa did not appear in this action and do not appear to have been served. (*See* Doc. 51 at 7.)

[2] By seeking the Court's leave to add Brandon Harvy as a defendant, Kivalu acknowledged that amendment was required to properly name Harvy in this action. He was therefore never properly a defendant in this case.

Statute § 12-349(A)(1), and the Court's inherent authority for bringing this lawsuit without substantial justification and without basis in law or fact, for abusing the judicial system and wasting the Court's limited resources by bringing multiple meritless lawsuits, and for causing defendants to expend unnecessary resources to defend against his continued meritless claims; and (2) under Rule 16(f) of the Federal Rules of Civil Procedure and the Court's inherent authority for failing to appear at the January 13, 2026 Motion Hearing.

(Doc. 56 at 1.) Kivalu responded with a "counter-motion to vacate [the] dismissal and reinstate [the] case." (Doc. 57 at 1 (citation modified).) He argues, as he has in other briefing, that the Court failed to notify him about the hearing on the motions to dismiss. (*Id.* at 2.) He also argues that, while his Ninth Circuit appeal in his September 2024 case was pending, this Court was divested of jurisdiction to dismiss this action, and claim preclusion was not applicable for lack of a final judgment in the case with a pending appeal. (*Id.* at 2-3.)[3] Finally, he argues that his allegations against Axen that Axen failed to provide him with a copy of his mortgage contract are "distinct and not precluded." (*Id.* at 4.)

UWM filed a motion for attorneys' fees and costs pursuant to Arizona Revised Statutes §§ 12-341.01 and 12-349(A)(1). (Doc. 58.) UWM seeks an award of $6,930.00 in fees and $5.55 in costs. (*See id.* at 22-23.) Kivalu responded to UWM's motion, not addressing why he brought claims that had been found meritless or barred or addressing any of the factors for awarding fees under Arizona's fee-shifting statute for cases arising out of contract, but instead restating the factual basis for his claims. (*See* Doc. 62 at 1-5.) The closest Kivalu comes to providing his basis for asserting these claims is that he "believes he has a strong case." (*Id.* at 6.) He also argues in conclusory fashion buried at the end of his brief that "[t]he attorney fees pleaded in Defendants' favor have no legitimate legal grounds and therefore must be denied." (*Id.* at 8.) In another brief filed later, Kivalu appears to argue that UWM cannot be considered a prevailing party for purposes of obtaining fees because his September 2024 case has a pending appeal before the Ninth

---

[3] Although the Court interprets Kivalu's argument to mean that he does not think his claims against the defendants to be precluded, he curiously states that his two previous lawsuits "were dismissed with prejudice[], establishing privity," such that "[c]laims against UWM and Carrington are barred and must be dismissed with prejudice." (Doc. 57 at 4.)

Circuit. (Doc. 69 at 2-3.)

Last, Kivalu filed a document entitled "Certificate of Appeallibility [sic] (COA)," which the Court interprets as requesting a certificate of appealability so that he may pursue in forma pauperis status on appeal. (*See* Doc. 74 at 1 (requesting a copy of the COA "as soon as possible" and stating that a "request for one" was enclosed).) Defendants have not indicated their position on this motion.

## II.

The Court first addresses its Order to Show Cause and whether Kivalu should be sanctioned under Rule 11, Arizona Revised Statutes § 12-349(A)(1), Rule 16(f), and the Court's inherent authority.

## A.

The Court analyzes Kivalu's conduct under Rule 11.[4] Rule 11 provides that, by "presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an . . . unrepresented party certifies," among other things, "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the "claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). By its own terms, Rule 11 applies to *pro se* litigants. *Id.*; *see also United States v. Merrill*, 746 F.2d 458, 465 (9th Cir. 1984) ("A pro se [party] is subject to the same rules of procedure . . . as [parties] who are represented by counsel."), *overruled on other grounds as stated in United States v. Hanna*, 293 F.3d 1080, 1088 n.5 (9th Cir. 2002). The Court may, on its own initiative, order a party to "show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). Possible sanctions include "nonmonetary directives" or "an order to pay a penalty into court." *Id.* (c)(4).

---

[4] Because the Court finds Kivalu's claims are sanctionable under Rule 11, it need not address whether Section 12-349(A)(1) applies in this action. *See In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 838 (9th Cir. 2001) (noting that "attorneys' fees [under state law] may be awarded by a district court when they are part of the state's substantive, rather than procedural, requirements" but that federal law applies "when fees are based upon misconduct by an attorney or party in the litigation itself").

If the complaint is the "primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the [party] has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (citation omitted). "In analyzing whether a complaint is sanctionable under Rule 11, [courts] employ an objective standard of reasonableness and do not consider . . . subjective good faith." *Lake v. Gates*, 130 F.4th 1064, 1068 (9th Cir. 2025); *see also G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003) ("The subjective intent of the movant to file a meritorious document is of no moment. The standard is reasonableness." (citation modified)). And courts consider whether the paper, "taken as a whole, is subject to sanction," even in the presence of "one non-frivolous claim." *Lake*, 130 F.4th at 1068 (citation omitted).

As for the first prong of the Rule 11 inquiry, the Court finds that Kivalu's complaint was legally baseless from an objective perspective. *See Holgate*, 425 F.3d at 676. As the Court explained in its order dismissing Kivalu's claims, all of the allegations asserted in this action (1) were "largely identical" to the allegations levied against the same defendants in previous cases or (2) could have been alleged in those actions, and judgment was entered against him on the merits. (*See* Doc. 51 at 4-8.) His claims fit squarely within the doctrine of claim preclusion. (*See id.*) Kivalu's claims against UWM were even found precluded once already. (*See id.* at 2-3.) Kivalu's claims were therefore not warranted by existing law. *See* Fed. R. Civ. P. 11(b)(2); *see also Zone Sports Ctr. Inc. v. Red Head, Inc.*, No. 11-cv-00634-JST, 2013 WL 2252016, at *5 (N.D. Cal. May 22, 2013) ("Courts in this circuit routinely hold that a claim that is barred by res judicata is frivolous.").

As for the second prong of the Rule 11 inquiry, the Court finds that Kivalu did not conduct a reasonable and competent inquiry before signing and filing his complaint. *See Holgate*, 425 F.3d at 676. In Kivalu's most recent case, his claims against UWM were dismissed on claim preclusion grounds. He was thus on notice before bringing this action that claim preclusion barred his claims against UWM and would bar the same claims

brought against other defendants or claims that could have been brought in previous actions. Given this notice, a reasonable and competent inquiry would have included carefully reviewing his claims in previous lawsuits to determine if his claims would be precluded in a new suit. Given the overlapping nature of the allegations in this action and his previous suits, the Court concludes that such an inquiry did not take place.[5]

Kivalu therefore violated Rule 11 by bringing this action. *See Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997) (affirming Rule 11 sanctions where a suit was deemed frivolous because it was "barred by the *res judicata* and collateral estoppel effects of [a] prior judgment" and "a reasonable and competent inquiry would have led to the same conclusion"). His response to the Order to Show Cause does not persuade the Court otherwise. His first substantive argument is that the Court lacked jurisdiction to dismiss his case because of his pending Ninth Circuit appeal of his September 2024 case, stating that "appeal of this case stemmed from the origin of complaint stemmed to [the pending appeal]." (Doc. 57 at 2.) "The fact that [Kivalu] filed a notice of appeal in a separate, but related, case does not divest this Court of jurisdiction . . . ." *United States v. Mendoza*, 390 F. Supp. 2d 925, 930 (N.D. Cal. 2005). And his argument that the issues pending in his Ninth Circuit appeal of his September 2024 case are so bound up with the issues in this case as to deprive the Court of jurisdiction here further confirm that Kivalu knew of the overlapping nature of his allegations between that action and this one and should have known that he lacked a legal basis to bring this action.

His second substantive argument is that the pending Ninth Circuit appeal of his September 2024 case means that there has not been a "final judgment" for claim preclusion to apply. (Doc. 57 at 2-3.) This argument is baseless. As the Ninth Circuit stated almost forty years ago, "[t]he established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal." *Tripati v. Henman*,

---

[5] To be clear, the Court considers the history in Kivalu's two previous cases to show that Kivalu was on notice in this litigation that claim preclusion stood as a bar to subsequent actions against the defendants based on the same allegations or allegations that could have been brought earlier, not as an independent or exacerbating ground for imposing sanctions. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1130 (9th Cir. 2002) (indicating that Rule 11 does not permit a court to rely on "conduct in other litigation" in imposing sanctions).

857 F.2d 1366, 1367 (9th Cir. 1988) (per curiam) (citation omitted). The court reasoned that to hold otherwise would "lead to an absurd result: Litigants would be able to refile identical cases while appeals are pending, enmeshing their opponents and the court system in tangles of duplicative litigation." *Id.* A reasonable and competent inquiry would have revealed this long-established rule.

Additionally, even if Kivalu were correct that the pending Ninth Circuit appeal of his September 2024 case meant that there was no final judgment of *that* dismissal, he fails to consider that his claims against UWM, Carrington, and Nexa would still have been barred by the final judgment in his June 2025 case; his claims were dismissed with prejudice and he did not appeal that judgment. (*See* Doc. 51 at 2-3, 4-8.) His claims against three of the four defendants in this action would therefore have been barred even considering the June 2025 judgment alone, and this would not allow Kivalu to avoid Rule 11 sanctions. *See Lake*, 130 F.4th at 1068 (noting that Rule 11 sanctions may still apply even in the presence of "one non-frivolous claim" (citation omitted)).

Kivalu's third substantive argument is that there is not claim identity because "the current suit involves distinct contracts and new forgery allegations, creating a separate transactional nucleus." (Doc. 57 at 3.) But as the Court explained in its previous order, his argument cannot be squared with the allegations made in his previous suits (*see* Doc. 51 at 5-8), and merely labeling claims "distinct" does not make them so. He also argues his claims against Axen arising out of its failure to provide him with a copy of his mortgage contract are "distinct and not precluded." (Doc. 57 at 4.) Even accepting Kivalu's description of his claims,[6] Kivalu fails to consider that claim preclusion applies not just to claims that were brought but also those that *could have been* brought. (*See* Doc. 51 at 6.) This concept was explained to him in the dismissal of his June 2025 case. (*See id.* at 3.) Claims against Axen arising out of its failure to provide Kivalu with a copy of his original 2022 mortgage contract could have been brought in his September 2024 action. (*See* Doc.

---

[6] The complaint in this action does not allege that Axen failed to provide Kivalu with a copy of his mortgage contract. Rather, it alleges that *Carrington* was "unable" to do so when he spoke with Carrington about its collection efforts. (*See* Doc. 1-1 at 11.)

1-1 at 26 (stating that the original mortgage contract was signed in 2022).)[7]

Finally, the Court finds that Kivalu has been provided with sufficient process as to his sanctionable conduct. "Ordinarily a court proposing to impose sanctions notifies the person charged both of the particular alleged misconduct and of the particular disciplinary authority under which the court is planning to proceed." *In re DeVille*, 361 F.3d 539, 548 (9th Cir. 2004). The Court provided Kivalu with this notice in its Order to Show Cause, and Kivalu was provided with an opportunity to respond both in writing and at the March 31, 2026 hearing. (*See* Docs. 56, 57, 79.)

The Court thus must consider an appropriate sanction under Rule 11. The sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). In the circumstances of this case, the Court finds that an appropriate sanction is that Kivalu pay a monetary penalty to the Court of $1,215.00 (*i.e.*, three times the filing fee to bring a civil action in this Court). The Court finds that a lesser sanction would not be sufficient to deter Kivalu's conduct, but that this sanction is not greater than necessary to achieve the Court's goal of deterring such conduct.

**B.**

The Court also finds that the above sanction could be imposed under its inherent authority. "Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quotation marks omitted). To be sanctioned under the Court's inherent authority "requires a finding of bad faith." *DeVille*, 361 F.3d at 548 (citation omitted). "A finding of bad faith is warranted where [a party] knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (quotation marks omitted). That other rules and statutes may support sanctions does not "displace[] the inherent power to impose

---

[7] Kivalu's other arguments do not pertain to the objective merit of his claims when they were brought and therefore are not considered in this analysis. (*See* Doc. 57 at 3, 5-6 (due process arguments about lack of notice of the hearing on the motions to dismiss); *id.* at 3 (arguments that Kivalu was not properly served with UWM's motion to dismiss).)

sanctions for bad faith conduct." *DeVille*, 361 F.3d at 551. This inherent authority permits the Court to "fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire*, 581 U.S. at 107 (citation omitted).

The Court finds that in this case, Kivalu's conduct in bringing this baseless action was tantamount to bad faith and is sanctionable under the Court's inherent authority. As discussed, Kivalu brought these claims against the defendants—and maintained them throughout—despite knowing or being on notice, given his previous cases, that his claims against the defendants were barred by claim preclusion. Thus, either Kivalu knowingly or recklessly brought these claims and pursued them. *See Primus Auto.*, 115 F.3d at 649. Although either would be sufficient for a bad faith finding, Kivalu's conduct in this case suggests to the Court that his actions were taken knowingly. First, that Kivalu filed this action in state court after two previous losses in federal court involving overlapping claims is indicative that he knew his claims were barred and was going to try his hand in a different forum. Second, that Kivalu has argued throughout this case that the pending Ninth Circuit appeal in the September 2024 case controls the disposition here is also indicative that he knew his previous claims overlap with claims in this action. (*See* Doc. 51 at 6 & n.4 (addressing Kivalu's request for a stay of proceedings in this action pending resolution of the appeal); Doc. 57 at 2 (arguing the Court lacked jurisdiction to dismiss because of the pending appeal); Doc. 66 at 10 (same); Doc. 69 at 2 (same).) Indeed, at a previous hearing, Kivalu indicated that the basis for his complaint in this action was "under review" at the Ninth Circuit.

The Court is mindful that its inherent powers "must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). That Kivalu has continued to bring these claims in an attempt to evade two adverse judgments, however, is an abuse of the legal system and has imposed significant costs on both the Court and the defendants. As for the defendants, the ones who appeared were forced to incur fees and spend time to defend against his baseless lawsuit, including to file successful motions to dismiss. As for the Court, it was required to spend precious time and resources addressing claims that

should never have been brought—and Kivalu's bevy of other motions and filings—taking its time and attention away from cases with meritorious claims. *See Maxwell v. MOAB Inv. Grp., LLC*, No. 14-cv-03095-WHO, 2014 WL 4757429, at *6 (N.D. Cal. Sep. 24, 2014) (stating that plaintiffs "placed [an] unnecessary burden on the courts by forcing them to address claims that were previously and conclusively decided in other tribunals"). And Kivalu has taken other abusive actions in this baseless case, including filing a motion for a temporary restraining order and preliminary injunction to prevent Carrington from proceeding with a foreclosure sale due to Kivalu's admitted decision to stop paying his mortgage for, at that time, sixteen or seventeen months. (*See* Doc. 14.) Carrington delayed exercising a legal remedy so the Court could rule on the motions to dismiss. (*See* Doc. 28 at 1-2); *Woodruff v. Mason McDuffie Mortg. Corp.*, No. 3:22-cv-03124-WHO, 2022 WL 4487011, at *6 (N.D. Cal. Sep. 12, 2022) ("This serial filing of nearly identical meritless suits also has another real-world consequence: it interferes with disposition of the property at issue. . . . [The plaintiff] should not be permitted to use the backdoor of frivolous suit upon frivolous suit to indefinitely delay a foreclosure."). The logical inference that the Court draws from these facts is that Kivalu filed this action, without regard to whether his claims are meritorious or not (and in the face of two judgments that they are not), to delay the inevitable result of his failure to make mortgage payments. That is not the purpose of this Court. *See Maxwell v. Deutsche Bank Nat'l Tr. Co.*, No. 13-cv-03957-WHO, 2014 WL 296873, at *2 (N.D. Cal. Jan. 27, 2014) ("The courts are not vehicles for hindering proper foreclosure proceedings that occur due to the plaintiffs' default on their mortgage. To date, and across multiple courts, the plaintiffs have failed to show any cognizable claim for relief.").

Given the circumstances of this case, the Court therefore determines that the monetary penalty imposed under Rule 11 could also be imposed under the Court's inherent authority.

As with the Court's analysis under Rule 11, the Court finds that Kivalu has been provided with due process regarding the Court's intention to impose sanctions under its

inherent authority. *See In re Lehtinen*, 564 F.3d 1052, 1060 (9th Cir. 2009) ("[W]hen using the inherent sanction power, due process is accorded as long as the sanctionee is provided with sufficient, advance notice of exactly which conduct was alleged to be sanctionable, and [was] furthermore aware that [he] stood accused of having acted in bad faith." (second and third alterations in original) (quotation marks omitted)), *abrogated on other grounds as stated in In re Gugliuzza*, 852 F.3d 884, 898 (9th Cir. 2017). As stated, the Court issued its Order to Show Cause, which identified the conduct for which he could be sanctioned (Doc. 56); Kivalu was given an opportunity to provide a written response, and he did so (*id.*; Doc. 57); and the Court held a hearing at which Kivalu was given an opportunity to be heard in response to the Order to Show Cause (*see* Doc. 79).

## C.

The Court next considers whether to impose sanctions for Kivalu's failure to appear at the hearing on the motions to dismiss. Rule 16(f)(1) provides that "the court may issue any just orders . . . if a party or its attorney" (1) "fails to appear at a scheduling or other pretrial conference," (2) "is substantially unprepared to participate . . . in the conference," or (3) "fails to obey a scheduling or other pretrial order." "Rule 16(f)'s explicit reference to sanctions reflects the Rule's intention to encourage forceful judicial management" and "vests a district court with discretion to impose whichever sanction it feels is appropriate under the circumstances." *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 53 (2d Cir. 2018) (quotation marks omitted); *see also Sherman v. United States*, 801 F.2d 1133, 1135 (9th Cir. 1986) (per curiam). And as mentioned, the Court may also "fashion an appropriate sanction for conduct which abuses the judicial process" pursuant to its inherent authority to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43-45 (citation omitted).

Kivalu's failure to appear at the hearing on the motions to dismiss has been the subject of several motions and orders concerning his claims that he did not receive sufficient notice of the hearing due to his malfunctioning email. (*See* Docs. 54, 55, 66, 72.) Kivalu again raised this issue at the March 31, 2026 hearing, at which the Court put Kivalu

under oath to answer whether he had notice of the hearing on the motions to dismiss. It was the Court's impression that, once Kivalu was put under oath, he became more equivocal about his supposed lack of notice. Additionally, his explanations did not at times make sense or were contradicted by the facts. For example, Carrington's counsel sent Kivalu an email on December 15, 2025, informing him that the Court set a consolidated hearing on the motions to dismiss on January 13, 2026, and providing him with copies of the Court's orders. (Doc. 78 at 4-8.) The Court notes that counsel's email responded to an email from Kivalu on that same day, undercutting that his email address was not functioning. (*See id.* at 4-5.) Kivalu has also previously submitted evidence of receiving emails at this email address. (Doc. 57 at 24 (email from UWM's counsel on December 15, 2025).) And, as the Court noted at the March 31, 2026 hearing, that Kivalu filed many documents in this case, such as his responses to briefs filed by defense counsel, is inconsistent with the notion that he did not receive notice of anything filed while his email was supposedly malfunctioning. Considering the circumstances and all the information before the Court, the Court finds that Kivalu and his explanations for missing the hearing are untrustworthy.

Even accepting Kivalu's explanations as true, however, as the Court explained in its orders, Kivalu was on notice long before the Court set the hearing on Defendants' motions that his email was not properly functioning, yet he still signed up for electronic noticing with that supposedly malfunctioning email. (Doc. 55 at 1; Doc. 72 at 2-3.) Kivalu also admitted that he reviewed the Court's docket at least twice before the hearing and therefore "lack[ed] an excuse for his failure to properly review the Court's orders that were issued during the time he was having issues with his email address." (Doc. 55 at 1; *see also* Doc. 72 at 2.) Further, the Court noted that Kivalu had been warned to "comply with all rules, keep current his contact information with the Court, and carefully review the Court's docket." (Doc. 72 at 2.)

Although Kivalu did not appear at the motion hearing, and although he lacked a valid excuse for failing to appear (*see* Docs. 55, 72), the Court will decline to sanction him for his failure to appear because the other sanction the Court will impose is, in the Court's

view, sufficient.

## III.

The Court next considers UWM's motion for attorneys' fees. (Doc. 58.) UWM moves for fees under Arizona Revised Statutes §§ 12-341.01 and 12-349(A)(1).

Under the "American Rule," a litigant's attorneys' fees are not ordinarily recoverable unless there is a statute or enforceable contract that provides for them. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967); *see also Astrue v. Ratliff*, 560 U.S. 586, 591 (2010); *London v. Green Acres Tr.*, 159 Ariz. 136, 145 (Ct. App. 1988). In this Court, parties requesting an award of fees must meet the content and formatting requirements outlined in the Local Rules of Civil Procedure. *See* LRCiv. 54.2.

## A.

Arizona Revised Statutes § 12-341.01 permits a "successful party" to recover reasonable fees for any "contested action arising out of a contract, express or implied." A.R.S. § 12-341.01(A). The fee award need not equal, but cannot exceed, the actual attorneys' fees paid, and it is the role of the Court, not the jury, to award such fees. *Id.* 12-341.01(B)-(C).

First, the Court finds that this action arises out of a contract. Arizona courts have interpreted the "arising out of a contract" requirement of A.R.S. § 12-341.01 broadly. *See, e.g.*, *Marcus v. Fox*, 150 Ariz. 333, 334 (1986) (en banc). The prevailing test for determining whether an action arises out of a contract is whether the cause of action could have existed "but for" the existence of a contract. *See Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 543 (1982) (en banc). This does not mean that a party must assert an explicit breach of contract claim, however. *See ML Servicing Co. v. Coles*, 235 Ariz. 562, 570 (Ct. App. 2014). A trial court may award attorneys' fees to the successful party even when tort claims are "interwoven" with contract claims. *Rudinsky v. Harris*, 231 Ariz. 95, 102 (Ct. App. 2012); *see also Sparks*, 132 Ariz. at 543 ("[A]ttorney's fees may be recoverable in tort cases which find their basis in contract.").

- 13 -

But the mere existence of a contract "somewhere in the transaction" is insufficient for the purposes of § 12-341.01. *Marcus*, 150 Ariz. at 335. If a particular contract "merely puts the parties within tortious striking range of each other," it "does not convert ensuing torts into contract claims." *Dooley v. O'Brien*, 226 Ariz. 149, 152 (Ct. App. 2010) (citation omitted). Moreover, the fee statute does not apply to purely statutory causes of action or where a contract is a factual predicate to the action but not its essential basis. *Hanley v. Pearson*, 204 Ariz. 147, 151 (Ct. App. 2003); *see also Kennedy v. Linda Brock Auto. Plaza, Inc.*, 175 Ariz. 323, 325 (Ct. App. 1993).

This action, although based in part on statutory causes of action, nevertheless arises out of contract because the contract—and Kivalu's theories about the lack of existence of a valid contract, fraudulent modification of a contract, forgery of his signatures on the contract, and breaching the escrow agreement—was the "but-for" cause of his claims, as his statutory claims would not have existed apart from the alleged fraudulent contract modifications. (*See* Doc. 1-1 at 11-12, 14-16); *see also ML Servicing Co.*, 235 Ariz. at 570 (defining the test as "whether the plaintiff would have a claim even in the absence of a contract" (quotation marks omitted)). Kivalu himself described his claims as based on the "unlawful attempts to collect payments based on a fraudulent modification of [his] original VA mortgage loan contract" and based on changes made to his contract to which he did not consent. (Doc. 1-1 at 11-12.) Kivalu also requested as part of his relief that the "modified contract [be declared] null and void" and that the defendants be enjoined from "collecting payments based on the fraudulent contract." (*Id.* at 17); *see Marcus*, 150 Ariz. at 335-36 ("[I]n the present case, Marcus was attempting to invalidate the contract with Fox. It was that contract which prompted this suit and also served as the basis for his claim. Stated otherwise, Marcus' cause of action for tort could not have existed but for the fraudulently induced contract."); *see also Tribe v. Ariz. Snowbowl Resort Ltd. P'ship*, No. 1 CA-CV 16-0521, 2020 WL 3526664, at *5 (Ariz. Ct. App. June 30, 2020) (finding a suit arose out of contract where, even though the claim "traditionally sound[ed] in tort," the claim "brought constitute[d] a direct attack on the contract"). Viewing Kivalu's complaint

as a whole, the contract therefore has "some causal connection with [Kivalu's] claim[s]" that permits an award under Section 12-341.01. *See Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 14 (Ct. App. 2000).

**B.**

The Court also concludes that UWM was a "successful party" for purposes of the statute. UWM succeeded in having all of Kivalu's claims against it dismissed with prejudice. (*See* Doc. 51 at 4-7.)

**C.**

"A finding of eligibility under § 12-341.01(A), without more, does not establish entitlement to fees." *Rindlisbacher v. Steinway & Sons Inc.*, No. CV-18-01131-PHX-MTL, 2021 WL 2434207, at *6 (D. Ariz. May 26, 2021). The Court must therefore weigh the "six factors which courts must consider when deciding whether to award attorney's fees to a prevailing party" under the statute. *See Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1319 (9th Cir. 1997). These factors are

> (1) the merits of the unsuccessful parties' claim or defense; (2) whether litigation could have been avoided or settled; (3) whether assessing fees against the unsuccessful party would cause extreme hardship; (4) whether the successful party prevailed with respect to all relief sought; (5) the novelty of the issues; and (6) whether the award will overly deter others from bringing meritorious suits.

*Id.*

The first factor—the "merits of the unsuccessful parties' claim or defense"—weighs in UWM's favor. *See Velarde*, 105 F.3d at 1319. As discussed in the Court's order granting UWM's motion to dismiss and in this Order, Kivalu's claims against UWM were meritless because they were barred by claim preclusion twice over. (Doc. 51 at 4-7.)

The second factor—"whether litigation could have been avoided or settled"—also weighs in UWM's favor. *See Velarde*, 105 F.3d at 1319. "[T]he express and recognized purposes of § 12-341.01 . . . are to mitigate the burden of the expense of litigation . . . and to encourage an early and ongoing assessment of the merits . . . ." *Fields v. Elected Offs.*

- 15 -

*Ret. Plan*, 248 Ariz. 241, 244 (Ct. App. 2020) (quotation marks omitted). The Court agrees with UWM that, had Kivalu conducted a reasonable assessment of the merits of his claims in light of the previous two judgments dismissing his claims against UWM with prejudice, this litigation could have been avoided. (*See* Doc. 58 at 8); *see also Rindlisbacher*, 2021 WL 2434207, at \*7 (finding this factor weighed in favor of movant because the plaintiffs had been "informed . . . that their claims were likely time barred" and the "decision to pursue their claims with knowledge of their shortcomings . . . support[ed] an award of attorneys' fees").

The third factor—"whether assessing fees against the unsuccessful party would cause extreme hardship"—is neutral. *See Velarde*, 105 F.3d at 1319. "[T]he party asserting financial hardship has the burden of coming forward with *prima facie* evidence of financial hardship," by "present[ing] specific facts by affidavit or testimony." *Woerth v. City of Flagstaff*, 167 Ariz. 412, 420 (Ct. App. 1990). Kivalu has not presented any affidavit or testimony of financial hardship in response to UWM's motion; rather, Kivalu chose to attack UWM's motion on the merits of its entitlement and of his claims. (*See* Docs. 62, 69.) That said, in light of Kivalu's *pro se* status, the Court considers this action as a whole, and notes that Kivalu was granted a fee deferral in state court (Doc. 1-2 at 1) and has maintained throughout that he is disabled (*see, e.g.*, Doc. 54 at 2). The Court considers these facts as suggestive that assessing fees against Kivalu could cause extreme hardship, but they are not sufficient to make this factor weigh against awarding fees, especially considering that Kivalu has not offered any evidence or argument about his ability to pay a fee award to UWM. *See Rindlisbacher*, 2021 WL 2434207, at \*8 ("Although the Rindlisbachers have presented some indication of hardship, they have not provided enough evidence for the Court to assess the type of hardship that a fee award would cause."). In addition, at the March 31, 2026 hearing, Kivalu indicated that he was financially capable of starting to make his mortgage payments again, which also suggests that fees in the amount UWM requests would not cause extreme hardship.

The fourth factor—"whether the successful party prevailed with respect to all relief

sought"—weighs in UWM's favor. *See Velarde*, 105 F.3d at 1319. UWM obtained dismissal with prejudice of all Kivalu's claims against it. (*See* Doc. 51 at 4-7.)

The fifth factor—"the novelty of the issues"—weighs in UWM's favor. *See Velarde*, 105 F.3d at 1319. Because Kivalu's claims against UWM were barred at the outset by claim preclusion and had been previously decided against Kivalu twice, there were no novel legal issues presented, which supports an award of fees. *See Rindlisbacher*, 2021 WL 2434207, at *8 ("When an issue is not novel, parties can more thoroughly and accurately evaluate the merits of their claims and associated risks.").

The sixth factor—"whether the award will overly deter others from bringing meritorious suits"—weighs in UWM's favor. *See Velarde*, 105 F.3d at 1319. The Court agrees with UWM that granting fees in this case would not deter meritorious claims. (Doc. 58 at 9-10.) Rather, granting an award in this case would deter *un*meritorious claims and would encourage litigants to seriously consider whether to "aggressively persist in litigation" in the face of previous adverse judgments. *Cf. Rindlisbacher*, 2021 WL 2434207, at *8.

Because the Court finds that the majority of the Section 12-341.01 factors weigh in favor of UWM and awarding fees, the Court exercises its discretion to award fees.[8] *See Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 186 (Ct. App. 1983) ("[T]he award of fees is one way to discourage the filing of frivolous or meritless claims.").

**D.**

Having determined that the Court will award fees to UWM under Section 12-341.01, the Court must determine whether UWM's requested fee award is reasonable. In doing so, the Court must consider "(1) whether the hourly billing rate is reasonable, and (2) whether the hours expended on the case are reasonable." *Rindlisbacher*, 2021 WL 2434207, at *9. "Once a party establishes its entitlement to fees and meets the minimum requirements in its application and affidavit for fees, the burden shifts to the party opposing the fee award to demonstrate the impropriety or unreasonableness of the requested fees."

---

[8] The Court therefore does not consider whether UWM would be entitled to fees under Section 12-349(A)(1). (Doc. 58 at 3, 5-6.)

*Nolan v. Starlight Pines Homeowners Ass'n*, 216 Ariz. 482, 491 (Ct. App. 2007).

The Court finds that UWM provided sufficient supporting documentation in support of its motion for fees. *See* LRCiv 54.2(d); (*see also* Doc. 58 at 14-15 (statement of consultation), 18-20 (declaration establishing billing rate, counsel's experience, and reasonableness of time spent), 22 (itemized statement of fees)).

The billing rate in this case was reasonable. "[T]he rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case." *Schweiger*, 138 Ariz. at 187-88. The Court has reviewed the declaration of Kristin McDonald in support of the pending motion. (Doc. 58 at 18-20.) The hourly billing rate for her time as a partner was $300 per hour. (*See id.* at 19.) Kivalu has not made any objection to the billing rate, and the Court concludes the rate is reasonable. *See, e.g.*, *Angel Jet Servs., LLC v. Giant Eagle, Inc.*, No. CV-09-01489-PHX-SRB, 2013 WL 11311729, at *7 (D. Ariz. Apr. 17, 2013) (finding hourly rates ranging from $255 to $520 per hour were reasonable for the Phoenix market).

The hours expended were also reasonable. The successful party is "entitled to recover a reasonable attorney's fee for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Schweiger*, 138 Ariz. at 188 (citation omitted). "The affidavit of counsel should indicate the type of legal services provided, the date the service was provided, the attorney providing the service . . . , and the time spent in providing the service." *Id.* The Court may reduce a fee award for hours not reasonably expended. *See id.* ("Just as the agreed upon billing rate between the parties may be considered unreasonable, likewise, the amount of hours claimed may also be unreasonable."); *see also Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.").

In support of the pending motion, UWM submitted billing entries disclosing all the

information required by *Schweiger*. (*See* Doc. 58 at 22); *see also* LRCiv 54.2(d)(3), (e). Ms. McDonald billed 23.1 hours, and UWM argues in its motion that it "conducted its defense in a manner to minimize the expense of litigation, particularly given [Kivalu's] history of repeated filings," including "proceed[ing] directly to bringing a dispositive motion rather than filing an Answer and propounding discovery." (*See* Doc. 58 at 11, 22.) Kivalu has not objected to the reasonableness of the hours claimed by UWM, *see* LRCiv 54.2(f) (requiring responses to "identify with specificity all disputed issues of material fact and . . . identify each and every disputed time entry or expense item"), and upon the Court's review of the billing entries, the Court finds that the hours spent for counsel to (1) respond to Kivalu's complaint, (2) prepare for and attend court hearings and comply with the Court's Orders, (3) keep her client apprised of the status of the case, (4) correspond with co-counsel, and (5) prepare the motion for fees, were generally reasonable and not excessive. *See Schweiger*, 138 Ariz. at 188. The Court will reduce by 20% the December 22, 2025 time entry for improper block billing because the Court could not determine how much time was spent on preparing the brief versus sending the brief to counsel's client; the Court will therefore reduce the requested fee for that task from $450.00 to $360.00. *See* LRCiv 54.2(e); *Rindlisbacher*, 2021 WL 2434207, at *12 (reducing block billing entries by 20%). The Court did not find any other billing entries seeking fees for unreasonable, clerical, or duplicative tasks or billing entries with an inadequate description.

The Court therefore will award UWM its fees in the amount of $6,840.00. (*See* Doc. 58 at 22.) UWM also requests costs in the amount of $5.55, consisting of mailing expenses. (*Id.* at 23.) UWM did not explain these mailing costs or verify them by, for example, attaching any receipt or invoice. *See* LRCiv 54.2(e)(3). The Court therefore will not award UWM its requested expenses.

**IV.**

The Court considers Kivalu's motion for a certificate of appealability so that he may pursue in forma pauperis status on appeal. (Doc. 74.) Based on the Court's review of the docket in Kivalu's pending appeal of this action, the Court notes that the Ninth Circuit

appears to be considering whether Kivalu's appeal is frivolous such that it will deny him permission to proceed in forma pauperis. *See* Doc. 9.1, *Kivalu v. Axen Mortg., LLC*, No. 26-781 (Mar. 19, 2026) ("It appears that this appeal may be frivolous. If the appeal is frivolous, the court will deny permission to proceed in forma pauperis and dismiss the appeal."). Because it appears the Ninth Circuit intends to rule on whether Kivalu should be allowed to proceed in forma pauperis, the Court declines to address Kivalu's motion in this Court absent further direction from the Ninth Circuit. The Court thus denies Kivalu's motion without prejudice.

## V.

Accordingly,

**IT IS ORDERED** that Kivalu is hereby sanctioned under Federal Rule of Civil Procedure 11 and the Court's inherent authority in an amount of $1,215.00 to be paid to the Court as a monetary penalty.

**IT IS FURTHER ORDERED** that Kivalu must make payment to the Clerk of Court by **May 7, 2026** and must file a Notice of Compliance within **14 days** of making payment.

**IT IS FURTHER ORDERED** that if payment is not made by May 7, 2026, interest will be imposed on a daily basis at the rate of 3.69% until received, including weekends and including up to the day prior to payment.

**IT IS FURTHER ORDERED** that Defendant UWM's motion for attorneys' fees and costs (Doc. 58) is granted in part and denied in part. UWM is awarded $6,840.00 in attorneys' fees under Arizona Revised Statutes § 12-341.01.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

**IT IS FINALLY ORDERED** that Kivalu's COA motion (Doc. 74) is denied without prejudice.

Dated this 7th day of April, 2026.

Michael T. Liburdi
United States District Judge